**C.A. DICKERSON, Roland R. Pennington, and David Vukovic, Plaintiffs,**

v.

**Doyne BAILEY, in his Official Capacity as Administrator of the Texas Alcohol Beverage Commission and John Cornyn in his Official Capacity as Attorney General of the State of Texas, Defendants.**

**No. CIV. A. H–99–1247.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 11, 2000.

Mark C Harwell, Cotham Harwell et al, Houston, TX, for C A Dickerson, Roland R Pennington, David Vukovic, plaintiffs.

Walter Reed Lockhoof, Asst. Atty General, Office of Attorney General, Austin, Austin, TX, for Doyne Bailey, in his official capacity as administrator of the Texas Al-

coholic Beverage Commission, John Cornyn, in his official capacity as Attorney General of the State of Texas, defendants.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced action, challenging as violative of the Commerce Clause of the federal Constitution Texas Alcoholic Beverage Code Ann. § 107.07 (Vernon 1995), prohibiting Texans from importing for their personal use more than three gallons of wine without being required to hold a permit

1. Defendant John Cornyn in his official capacity as Attorney General of Texas was dismissed on August 11, 19999, pursuant to Plaintiffs' motion for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1).

The Court is aware that when the constitutionality of a state statute is challenged in Texas, the attorney general must be given notice of the suit, though he need not actually be sued as a party. Texas Civil Prac. & Rem.Code Ann. § 37.006(b)("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard"); *Moore v. Morales*, 63 F.3d 358, 360–61 (5th Cir.1995)("[B]y statute the State of Texas requires that, when the constitutionality of one of its laws is challenged, 'the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard', Tex. Civ. Prac. & Rem.Code § 37.006(b) ....''). This requirement has been satisfied here.

2. The Court notes that the federal Constitution empowers Congress "[t]o regulate Commerce ... among the several states." U.S. Const. art. I, § 8, cl. 3.

The courts have interpreted the language of this provision affirmatively granting authority to Congress to regulate commerce as having a "negative" aspect, designated the "dormant" commerce clause, that implicitly establishes a national free market and restricts state and local governments from impeding the free flow of goods from one state to another. *Wyoming v. Oklahoma*, 502 U.S. 437, 469–70, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992); *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir.1999). The dormant commerce clause does not affect state or local regulations that are directly authorized by

unless that resident "personally accompan[ies] the wine or liquor as it enters the state," are Plaintiffs C.A. Dickerson, Roland R. Pennington, and David Vukovic's motion for summary judgment (instrument # 8) and Defendant Doyne Bailey's cross motion for summary judgment (# 18).[1]

Plaintiffs "seek a declaration that Section 107.07 deprives them of their constitutional right to participate in interstate commerce in violation of the dormant commerce clause and their civil rights under 42 U.S.C. § 1983."[2] The relevant portions of the statute provide,

Congress, but only the states' authority to regulate in areas in which Congress has not affirmatively acted. *Houlton*, 175 F.3d at 184, citing *Southern Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 769, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945), and *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 571, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997).

If a state or local government enacts such a law that improperly favors in-state commercial interests over those from out-of-state entities, the court will declare such a protectionist law unconstitutional under the dormant commerce clause "'unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.'" *Id.*, quoting *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192–93, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994).

The threshold question is whether the challenged statute, ordinance or regulation discriminates on its face against interstate commerce and in favor of local businesses and is therefore *per se* invalid, in contrast to regulating commerce even handedly with only incidental effects on interstate commerce. *Houlton*, 175 F.3d at 184, citing *C. & A. Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).

Usually a finding of direct facial discrimination under the commerce clause is fatal and at minimum triggers the strictest scrutiny. *Id.* at 185; *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979); *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). There is, nevertheless, a narrow class of cases that are an exception to the *per se* invalidity rule where "the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* at 184. *See also New Energy Co. of Indiana v. Limbach*, 486 U.S.

(a) A Texas resident may import for his own personal use not more than three gallons of wine without being required to hold a permit. . . . A person importing wine under this subsection must personally accompany the wine . . . as it enters the state . . . .

(f) Any person in the business of selling alcoholic beverages in another state or country who ships or causes to be shipped any alcoholic beverage directly to any Texas resident under this section is in violation of this code.

Violations of § 107.07 are punishable as crimes. Tex. Alco. Bev.Code Ann. § 1.05.

Plaintiffs, who are wine consumers, have tried to purchase wines from Wiederkehr Wine Cellars in Altus, Arkansas that are unavailable in Houston markets, but Wiederkehr will not ship wines in violation of the statute. They also wish to tour wineries in other states, many of which produce

269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)("even plainly discriminatory statutes may survive a Commerce Clause challenge if the State can demonstrate that the statutes advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives"); *Hughes*, 441 U.S. at 336, 99 S.Ct. 1727 (state must demonstrate local benefits of statute and lack of neutral alternatives adequate to present interests at stake); *Wyoming v. Oklahoma*, 502 U.S. 437, 456, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992)(same). The state bears the burden "to rescue its statutes." *Cooper v. McBeath*, 11 F.3d 547, 553 (5th Cir.1994), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994).

If, on the other hand, the court finds that the statute does not discriminate on its face, but regulates even-handedly and only indirectly affects interstate commerce, the court then applies a balancing test to determine its constitutionality and upholds the statute unless it places a burden on interstate commerce that is " 'clearly excessive in relation to the putative local benefits.' " *Id.* 184 and 189, *quoting Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). This flexible approach is referred to as the *"Pike"* test, which is applied only "where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade." *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

The courts have increasingly decided, however, that there is no bright line separating the *per se* facially invalid cases from those subject to a balancing approach under *Pike*, and that in both the critical concern is the overall effect of the challenged statute on both local and interstate activity. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 440–41, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). Proof of either a statute's discriminatory purpose or discriminatory effect may lead a court to find that the statute constitutes economic protectionism in violation of the commerce clause. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471 n. 15, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The central purpose of the dormant commerce clause is to prevent states from promulgating protectionist policies, i.e., regulatory measures aimed to protect in-state economic interests by burdening out-of-state competitors. *Houlton*, 175 F.3d at 188, *citing Camps Newfound/Owatonna*, 520 U.S. at 578, 117 S.Ct. 1590 *New Energy Co. v. Limbach*, 486 U.S. 269, 273–74, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), and *Clarkstown*, 511 U.S. at 390, 114 S.Ct. 1677.

As will be discussed in detail later, at issue in this case is an alleged conflict between the commerce clause and the twenty-first amendment, which grants states broad powers to regulate the transportation and importation of alcohol for delivery and use within their borders. If the Court finds that § 107.07(a) and/or (f) of the Texas Alcohol Beverage Code Ann. violates the commerce clause by discriminating against interstate commerce or by favoring in-state economic interests at the expense of out-of-state interests, the Court must next determine whether § 107.07 is a valid exercise of the state's power under the twenty-first amendment sufficient to "save" it from invalidation under the commerce clause, i.e., "whether the principles underlying the Twenty-first Amendment are sufficiently implicated ... to outweigh the Commerce Clause principles that would otherwise be offended." *Brown–Forman Distillers Corporation*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986); *Bacchus Imports Ltd. v. Dias*, 468 U.S. at 275, 104 S.Ct. 3049. As will be addressed, the Supreme Court's view of the state's powers to regulate liquor importation under the twenty-first amendment in view of the commerce clause has increasingly been narrowed and modified during the past sixty years.

wines unavailable here, and to ship wines to their homes from out-of-state. Although it is legal for them to buy and consume wine inside and outside of Texas, they assert with supporting affidavits that the statute creates a significant burden to interstate commerce and bars them and all other Texans from engaging in their fundamental liberty of interstate commerce in shipping wines from outside Texas to their homes. Defendant Doyne Bailey has indicated that he intends to and will enforce the statute with criminal prosecutions. Plaintiffs contend that the statute regulates or discriminates against interstate commerce or has the effect of favoring in-state economic interests over out-of-state interests and is therefore a *per se* violation of the commerce clause. They maintain that Texas' interests under the twenty-first amendment[3] do not supersede Plaintiffs' civil right to engage in interstate commerce.

Plaintiffs point to the United States Supreme Court's two-tiered analysis of state regulation under the commerce clause:

> When a state statute directly regulates or discriminates *against interstate commerce, or* when its effect is to favor in-state economic interest over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates even handedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).

Plaintiffs observe that using this analysis, the Supreme Court has stricken as unconstitutional alcoholic beverage stat-

utes with the same direct impact upon interstate commerce as the one challenged here: *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)(state's exemption of locally produced alcoholic beverages from state's wholesale excise tax); *Brown–Forman,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 ("affirmation law" requiring the alcoholic beverage producer to affirm that prices set for local wholesalers are no higher that the lowest prices in other states); *Healy v. The Beer Institute, Inc.,* 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989)(an affirmation statute requiring brewers and importers to affirm that their posted prices were no higher than their prices in bordering states and which allowed out-of-state brewers and importers to change their out-state prices). Furthermore, using this analysis, the Fifth Circuit struck down Texas Alcohol Beverage Code Ann. §§ 11.46(a)(11), 11.61(b)(19), 28.04, and 109.53, which allowed the Texas Alcoholic Beverage Commission ("TABC") to refuse a liquor permit to persons who had not been Texas citizens for three years. *Cooper v. McBeath,* 11 F.3d 547 (5th Cir. 1994), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Plaintiffs maintain that the same analysis shows that § 107.07 is unconstitutional.

On its face the statute directly regulates interstate commerce, Plaintiffs claim, because it prohibits Texas residents from personally transporting more than three gallons of wine over the border, thus directly impacting wine sales outside of Texas only. It also prohibits non-Texas wine sellers from selling wines to Texas residents if the wines are shipped or caused to be shipped into Texas.

Plaintiffs contend that the statute discriminates against interstate commerce.

---

**3.** The twenty-first amendment, adopted in 1933, repealed the eighteenth amendment and ended the fourteen-year era of Prohibition. It states in relevant part,

> Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

> Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. XXI, §§ 1, 2.

First, it discriminates by prohibiting a Texas resident from personally transporting more that three gallons of wine over the border, but not prohibiting a resident from transporting more than three gallons inside the state.[4] Similarly, the statute prohibits non-Texas wine sellers from shipping wines or causing wines to be shipped to Texas residents, but not local Texas wineries[5] or Texas retailers[6] from shipping wines or causing wines to be shipped to Texas residents.

Furthermore, argue Plaintiffs, the statute favors in-state economic interests over out-of-state interests. They explain that in Texas, there is a three-tier system for distribution of alcoholic beverages. Suppliers, i.e., distilleries, wineries and breweries, manufacture the alcoholic beverages. The suppliers may only sell the beverages to wholesalers/distributors, which constitute the second tier. Finally, the wholesalers may only sell the alcoholic beverages to other wholesalers or to retailers, the third tier, which may only purchase the beverages from wholesalers. Plaintiffs contend that the Texas direct shipment statute prevents circumvention of the Texas wholesaler by barring sales directly from an out-of-state winery to a Texas consumer, thereby protecting the Texas wholesalers' monopoly over in-state sales as well as Texas' tax revenue, which is collected from the wholesalers. Such interests are purely in-state economic interests and are unrelated to temperance. "State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unre-stricted traffic in liquor." *Bacchus,* 468 U.S. at 276, 104 S.Ct. 3049.

Plaintiffs insist that a statute that directly regulates or discriminates against interstate commerce can survive a commerce clause challenge only if the state proves the existence of "a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

Established local interests traditionally include (1) collection of taxes otherwise avoided by the circumvention of the three-tier distribution system, (2) prohibiting delivery of alcoholic beverages to dry areas, and (3) prohibiting delivery of alcoholic beverages to minors. For each there are reasonable, nondiscriminatory alternatives, including other more narrowly drawn statutes, to the disputed statute's over-inclusive total ban on shipping. *See, e.g.,* Tex. Alco. Bev.Code Ann. § 106.03 (Class A misdemeanor to sell alcoholic beverages to a minor); § 106.06 (Class B misdemeanor to make alcoholic beverages available to a minor); § 107.03 (prohibits any carrier from transporting and delivering liquor to a person in a dry area); § 101.31 (prohibits alcoholic beverage transportation, delivery or possession with intent to sell within any dry area).

Instead, Plaintiffs charge that Defendant's alleged concerns are "nothing but a pretextual rationale ... for economic protectionism." *Quality Brands v. Barry,* 715 F.Supp. 1138, 1143 (D.D.C.1989), *aff'd,*

---

**4.** Texas Alcoholic Beverage Code § 107.08 (1997) provides, "A person who purchases an alcoholic beverage for his own consumption may transport it from a place where its sale is legal to a place where its possession is legal without holding a license or a permit."

**5.** Texas Alcoholic Beverage Code § 16.01(a)(4) (1997) provides, "The holder of a winery permit may: .... (4) sell wine to ultimate consumers in unbroken packages for off-premises consumption not to exceed 25,-000 gallons annually ...."

**6.** Texas Alcoholic Beverage Code § 22.03(a)(1997) provides, "The holder of a package store permit or wine only package store permit ... who also holds a local cartage permit, may make deliveries of and collections for alcoholic beverages off the premises ... in response to bona fide orders place by the customer, either in person at the premises, in writing, by mail, or by telegraph or telephone."

901 F.2d 1130, 1990 WL 51795 (D.C.Cir. 1990).

Plaintiffs also contend that the state's revenue interest may not serve as a "legitimate" basis for a *per se* violation of the commerce clause since there are other reasonable and nondiscriminatory alternatives. The state may easily impose an alternative collection of revenue on out-of-state wine sales, such as requiring the wineries or shippers to collect and pay the taxes. They note that Louisiana requires an out-of-state shipper to purchase a $150 permit, while Hawaii allows a buyer to receive up to five gallons per year with the purchase of a permit at a nominal fee.

Plaintiffs cite *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) for an example of the kind of circumstances warranting a rare exception to the commerce clause's prohibitions. In that case, the Supreme Court upheld Maine's total bar on importation of bait fish because Maine had a legitimate and substantial interest in protecting its unique and fragile fisheries from the potential introduction of parasites prevalent in out-of-state bait fish. There were no reasonably available testing procedures to exclude contaminated out-of-state bait fish. 477 U.S. at 147, 106 S.Ct. 2440. In contrast, Plaintiffs emphasize that in the instant suit, protection of any unique Texas environment is not a factor and there are known, reasonable nondiscriminatory alternatives for tax collection.

Because the statute regulates interstate commerce, thus rendering the second tier of the *Brown–Forman* analysis inapplicable, and because its impact on interstate commerce is direct, Plaintiffs assert that the burden on interstate commerce clearly exceeds the local benefits obtained. Commerce is completely banned, while the state's interests in taxes, dry areas, and minors are only marginally benefitted, if at all. Less restrictive regulations could protect these interests. Thus a balancing of the interests demonstrates that the state's are outweighed by the onerous impact on interstate commerce.

Furthermore, Plaintiffs maintain that the twenty-first amendment does not abrogate the commerce clause. Section 2 of the twenty-first amendment provides, "The transportation or importation into any State, Territory, or possession of the United States, for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. The Supreme Court has consistently ruled that Section 2 permits only interstate "core" regulation of alcoholic beverages by a state. In *Bacchus*, it pronounced that "the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution" and that both must be considered. 468 U.S. at 275, 104 S.Ct. 3049. The *Bacchus* Court found that Hawaii's tax exemption for locally produced liquor was promulgated "to promote local industry," not "to promote temperance," and that it therefore was unconstitutional despite the twenty-first amendment. In *Brown–Forman*, the Supreme Court concluded that while New York has a valid constitutional interest in regulating liquor sales inside New York, that state interest does not authorize it to control sales in other states and thus its affirmation law was not saved by the twenty-first amendment. 476 U.S. at 585, 106 S.Ct. 2080. Expanding this holding, in *Healy v. The Beer Institute*, the Supreme Court held that prospective, retrospective, and contemporaneous affirmation laws violate the commerce clause because they "have the inherent practical extraterritorial effect of regulating liquor prices in other States." 491 U.S. at 342, 109 S.Ct. 2491. Thus the twenty-first amendment "does not immunize state laws from invalidation under the Commerce Clause when those laws have the practical effect of regulating liquor sales in other States." *Id.* at 342, 109 S.Ct. 2491. As the Fifth Circuit indicated in *Cooper v. McBeath*, 11 F.3d at 555,

[T]he chief question is whether the interests implicated by a State's regulation "are so closely related to the powers reserved by the Twenty-first amend-

ment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714, 104 S.Ct. 2694, 81 L.Ed.2d 580 ... (1984). "[T]he central purpose of the Amendment was not to empower the States to favor local liquor industries by erecting barriers to competition. It is also beyond doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkanization." *Bacchus*, 468 U.S. at 276, 104 S.Ct. 3049 . . . .

Thus, sum up Plaintiffs, if the statute promoted only Texas' core, twenty-first amendment interest, i.e. temperance, then that interest must be weighed against the burdens placed upon interstate commerce by the statute. If the statute does not promote a core interest or if Texas' interests are outweighed by the federal interest of interstate commerce, the statute is unconstitutional.

Plaintiffs emphasize that the statute is not a temperance statute, and it does not prohibit the sale and delivery of alcoholic beverages to minors or to dry areas within Texas. Moreover, § 107.07 does not mention deliveries to minors or dry areas,[7] probably because other statutes (i.e., Tex. Alco. Bev.Code Ann. §§ 107.03 and 106.01 *et seq.*) expressly forbid such conduct and protect the state's interest in promoting temperance.

The statute does create a heavy burden on interstate commerce that clearly outweighs the state's interests. It regulates commerce in every state where Texas residents might otherwise wish to purchase wines. That burden is exacerbated by the marketing limitations of the three-tier distribution scheme in Texas and the explosion of small wineries nationwide which the

wholesalers cannot begin to handle and offer for sale. Most wineries and customers are locked out from conducting business in most markets, including Texas.

Defendant Doyne Bailey's cross motion for summary judgment, at p. 1, presents the following issue to be decided by this Court:

A state's core powers include controlling the manner and means of importing alcohol within its boundaries. Under Texas's regulatory system, a license or permit is required to transport more than 3 gallons of wine into the State. Dickerson, Pennington, and Vukovic maintain that the Commerce Clause permits the unrestricted import of Arkansas wine. Is regulating the manner and means of importing wine into Texas a core power under the Twenty–First Amendment?

Defendant explains that the Texas Alcohol Beverage Code requires a permit or license to transport all alcoholic beverages, including wine, into Texas. The sole exception to this comprehensive regulatory scheme is § 107.07 of the Code, which provides that "a Texas resident may import for his own personal use not more than three gallons of wine without being required to hold a permit.... A person importing wine under this subsection must personally accompany the wine ... as it enters the state." Tex. Alco. Bev.Code § 107.07(a). Plaintiffs charge that the restriction on the quantity of wine they may bring in and their inability to have wine shipped into the state amounts to economic protectionism violating the commerce clause. Defendant further observes that Plaintiffs seek to challenge § 107.07(f),[8] but lack standing to do so since that provision applies only to an out-of-state business selling alcoholic beverages.

---

7. "Dry" means that the sale and possession for sale of liquor is prohibited. According to the affidavit of Brian Guenthner, geographically the top half of Texas is dry. Ex. A at 2.

8. Section 107.07(f) provides, "Any person in the business of selling alcoholic beverages in

another state or country who ships or causes to be shipped any alcoholic beverage directly to any Texas resident under this section is in violation of this code." Tex. Alco. Bev.Code Ann. § 107.07(f) (Vernon 1995).

Furthermore, Defendant emphasizes that section 2 of the twenty-first amendment "created an exception to the normal operation of the Commerce Clause to permit States to prohibit commerce in, or the use of, alcoholic beverages." *Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 533, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (O'Connor, J., concurring). A state's authority extends to all laws enacted under the Amendment's core powers related to the regulation of consumption, importation and distribution of alcoholic beverages. *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 333, and 331 n. 10, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). In effectuating this core power, the states are empowered to create a regulatory scheme to monitor the flow and production of liquor and to preclude the diversion of liquor into the state's commerce without first channeling it through the state's regulatory safeguards. *North Dakota v. United States,* 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990). This substantial deference to the state's power to regulate liquor within its own boundaries does not completely insulate state control of liquor from the commerce clause, however.[9]

The twenty-first amendment is subject to the supremacy clause, the equal protection clause, and the first amendment. *Liquormart,* 517 U.S. at 533, 116 S.Ct. 1495. The critical inquiry in determining where the state's regulatory power collides with federal law is "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-[F]irst Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 714, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). As applied here, insists Defendant, the limitation on the manner and means by which Plaintiffs may import Arkansas Wiederkehr wine into the State falls within Texas' core power under the twenty-first amendment. The requirements for importing liquor in Texas are supported by express federal law. *Hostetter,* 377 U.S. at 333 n. 11, 84 S.Ct. 1293; 27 U.S.C. §§ 121, 122, 203, and 204(a)(2)(C). Defendant points out that without the exception created by § 107.07(a), Plaintiffs would be barred by Texas' comprehensive regulatory system from bringing any foreign wine into Texas.

Defendant explains that § 107.07(a) is part of the state's comprehensive regulatory scheme for the manufacture, sale, possession, import, transport, distribution and solicitation of alcoholic beverages. Affid. of Brian Guenthner, Director of Licensing, TABC, Ex. A at p. 2. Following Prohibition, Texas has prevented the unlawful diversion of liquor into state commerce by strictly regulating the import and distribution of liquor within its borders. *Id.* at 2–3. The regulatory scheme established the three-tier system, described by Plaintiffs, with strict division of manufacturer, wholesaler, and retailer, to "prevent[ ] companies with monopolistic tendencies from dominating all levels of the alcoholic beverage industry." *S.A. Discount Liquor, Inc. v. Texas Alcoholic Beverage Commission,* 709 F.2d 291, 293 (5th Cir. 1983).

Defendant further explains that under the three-tier system, one must have a permit to import wine into the state. Tex. Alco. Bev.Code Ann. §§ 18.01, 19.01, 20.01, and 21.01 (Vernon 1995). An out-of-state winery may solicit, take orders and ship its wine into Texas if it obtains a Non–Resident Seller's Permit. Tex. Alco. Bev.Code Ann. § 37.01 (Vernon 1995). If it lacks such a permit, it may send its wine into Texas by designating a broker holding a non-Resident's Seller Permit as its primary American source of supply and exclusive agent. Tex. Alco. Bev.Code Ann. §§ 37.03 and 37.10 (Vernon 1995). That broker may then solicit orders for wine

---

**9.** Noting that Defendant relies heavily on *North Dakota v. United States,* 495 U.S. 423, 110 S.Ct. 1986, 109 L.Ed.2d 420, Plaintiffs point out that it was a split decision with no majority opinion and that the facts are quite different from those in the instant case.

from permittees authorized to transport wine into Texas. Tex. Alco. Bev.Code Ann. §§ 37.01 and 37.03 (Vernon 1995).

Under the exception to this scheme set out in § 107.07(a), a Texas resident may import a limited amount of out-of-state wine for personal consumption. What Plaintiffs seek to do is to eliminate the exception and engage in unrestricted importation of out-of-state wine.

Defendant contends that limiting the amount of out-of-state wine and the means of its entry into the state's commerce falls within the core powers authority under the twenty-first amendment. Balancing the limitations on the states imposed by the commerce clause against the states' inherent authority to regulate liquor under the twenty-first amendment, Defendant emphasizes that state statutes regulating the importation and distribution of alcohol within their borders is afforded broad discretion as a means of limiting or prohibiting it. *Gordon v. State of Texas*, 166 Tex.Crim. 24, 310 S.W.2d 328, *aff'd*, 355 U.S. 369, 78 S.Ct. 363, 2 L.Ed.2d 352 (1958). Allowing the direct import of unlimited quantities of wine to individuals outside the established regulatory scheme would permit evasion of Texas' control over the import and distribution of alcoholic beverages within its borders.

Finally, Defendant notes that as a practical matter, according to TABC's records as well as Plaintiffs' summary judgment evidence in the affidavit of Troy Clark, CEO of Wiederkehr Wine Cellars, Inc., Wiederkehr has a Non–Resident Seller's permit to ship its wine into a licensed wholesaler in Texas, specifically Longhorn Liquors Ltd. Ex. A at 3–4. Thus any Houston liquor store could provide Plaintiffs with the wines through that wholesaler.[10] Under Texas law, the liquor store would contact Longhorn Liquors to arrange to purchase the wine.

In response, Plaintiffs assert that Defendant failed to address their argument that the statute facially violates the commerce clause and otherwise substantially burdens interstate commerce and thereby conceded these points. Furthermore, the response addresses three issues: (1) that Plaintiffs have standing to assert their rights individually and to assert *just tertii* the rights of foreign-state sellers; (2) that the statute is not protected by the twenty-first amendment's reserved powers; and (3) summary judgment should be granted in favor of Plaintiffs.

Plaintiffs first note that Defendant offers no authority and no analysis to support his contention that they lack standing to challenge § 107.07(f). For standing, to meet the constitutional requirements under Article III, a plaintiff must allege "a personal stake in the outcome of the controversy to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). A plaintiff "must allege some threatened or actual injury ... before a federal court may assume jurisdiction." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).[11] Here Plaintiffs allege and provide evidence that they have ordered wines from Wiederkehr, but that because Wiederkehr must comply with § 107.07(f), Wiederkehr has

---

**10.** Plaintiffs object to the "conclusory and purely speculative nature" of Guenthner's affidavit on this issue and point out that Troy Clark states the same thing in his affidavit but adds, "after many attempts we have been unable to locate any wholesaler in Houston who is willing to carry our products." They also submit an affidavit from Van D. Moore with a detailed description of the magnitude of the problem that Plaintiffs assert is a simple procedure. Furthermore, the bottom line is that Wiederkehr cannot ship directly to Plaintiffs.

**11.** When the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant the exercise of jurisdiction. *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)

refused to ship the wine. They have also demonstrated that many other Texans desire to do the same. Plaintiffs claim they have not only been injured by a duty imposed on them by the § 107.07(a) not to import wine unless they carry it across the border into Texas, but also by the denial of their ability to conduct interstate commerce because of the duty imposed on out-of-state wineries by § 107.07(f).

Asserting that the standing requirement is not narrow or rigidly formalistic, Plaintiffs claim that they come within the "zone of interest" of persons injured by the prohibition against purchasing wine from out-of-state vintners under § 107.07(f). The "zone of interest" test is applied to commerce clause issues.[12] *Dennis v. Higgins,* 498 U.S. 439, 449, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991); *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 320–21 n. 3, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). Plaintiffs satisfy the three-pronged test for standing established in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992):(1) injury in fact that is (a) concrete and particularized and "actual or imminent," i.e., not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, i.e., the injury must be fairly traceable to the challenged action of the defendant and not the result of independent action of a third party not before the court; and (3) it

must be likely that the injury will be redressed by a favorable decision by the court. Moreover, in *General Motors Corp. v. Tracy,* 519 U.S. 278, 286, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997), the Supreme Court stated,

> [C]ognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a state ultimately discriminates, and customers of that class may also be injured .... Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III.

Insisting they have standing, Plaintiffs argue that they have sustained an injury in fact that is concrete, particularized and imminent in the statutory denial of their right to engage in interstate commerce with out-of-state sellers. The causal connection is directly traced to § 107.07(f) because Wiederkehr's coerced obedience to that provision prohibits Plaintiffs' enjoyment of their rights. A decision by the Court to enjoin Defendant's enforcement of the provision will directly redress Plaintiff's injury, Plaintiffs maintain.

Furthermore, Plaintiffs urge, the doctrine of *jus tertii,* an exception to the general standing requirements, also supports Plaintiffs' standing to challenge the validity of the statute on behalf of their

---

12. The Court notes that federal court standing principles are derived from Article III of the Constitution, with its requirement of a personal stake in the outcome of an actual case or controversy where the plaintiff has suffered some actual or threatened injury, and from prudential or policy concerns. Prudential or policy considerations may, but do not have to be considered, in a court's evaluation of standing. Examples of prudential limits on federal court jurisdiction are the third-party standing rule, which normally bars litigants from asserting the rights or legal interests of others not before the court in order to obtain relief from injury to themselves, and the "zone-of-interest" test. Under the zone-of-interest test, the plaintiff must demonstrate that the interest he is asserting is the kind of interest that arguably is within the zone of interests that the legislature sought to protect

or regulate when it passed the statute or created the constitutional provision at issue. *Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The zone-of-interest test "denies a right of review if the plaintiff's interests are ... marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision]." *Wyoming v. Oklahoma,* 502 U.S. 437, 469, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992). The zone-of-interest test is applied to claims under the dormant commerce clause. *Id.* The purpose of the commerce clause is to prevent economic protectionism and retaliation between states and to allow markets to flourish across state borders, and thus to prohibit "laws that would excite ... jealousies and retaliatory measures" between states. *Carbone,* 511 U.S. at 390, 114 S.Ct. 1677.

would-be sellers. There are two types of cases involving *jus tertii* standing: (1) where the litigants challenge statutes that regulate their activity and thereby violate the rights of third parties; [13] and (2) where litigants seek to assert only the rights of third parties being violated by a statute. In the first, exemplified by *Griswold* and *Eisenstadt*, standing depends upon whether the litigant's relationship with third party is such that "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). In the second, standing depends on whether the third party is able to assert the right before the court on his own behalf. *Id.* at 115–16, 96 S.Ct. 2868.

Plaintiffs cite *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), in which the Supreme Court held that an alcohol vendor had standing to challenge an Oklahoma statute prohibiting the sale of 3.2% beer to males under 21 years of age and to females under 18 years of age as a violation of equal protection under the fourteenth amendment. If the vendor heeded the statute, he would incur economic injury, but if he disobeyed the statute, he would suffer the resulting sanctions. *Id.* at 194, 97 S.Ct. 451. The Court found that the vendor could also "assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force." *Id.* at 195, 97 S.Ct. 451.

Plaintiffs emphasize that in the instant case they have suffered an injury-in-fact, i.e., denial of their right to engage in inter-

state commerce because of the threatened enforcement of § 107.07(a) against them and because of the threatened enforcement of § 107.07(f) against their would-be vendor. Moreover, they maintain that the concomitant rights of wine sellers to engage in interstate commerce would be diluted and adversely affected if Plaintiffs' challenge fails. Therefore, they insist, they have standing.

Plaintiffs also contend that the commerce clause violation, which the State has conceded, is not saved by the twenty-first amendment, contrary to the State's arguments. Plaintiffs insist that the State cannot show (1) that the statute furthers any cognizable state interest, no less one deserving deference under the twenty first amendment; (2) that the twenty-first amendment's impact on liquor regulation is not to repeal the commerce clause, but to confer deference if and when a statute genuinely implicates temperance concerns; and (3) the relief sought by Plaintiffs would not impede any interest implicated by the twenty-first amendment. They address each point in turn.

Defendant has argued that § 107.07 is part of a comprehensive scheme to regulate the manufacture, sale, and possession of alcoholic beverages and falls within the core powers reserved to the State by the twenty-first amendment. The three-tier distribution system, according to Defendants, precludes companies from obtaining a monopoly and dominating all levels of the industry. Furthermore, Defendant has contended that § 107.07(a) is an exception to the comprehensive scheme without

**13.** In such cases, plaintiffs have uniformly been allowed to assert the rights of the affected third parties. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)(a doctor and the executive director of Planned Parenthood allowed to assert constitutional rights of married people with whom Planned Parenthood had a professional relationship because those rights would likely be diluted or adversely affected if the challenge failed); *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)(allowing a distributor of contraceptives to assert the rights of unmarried distributees because of the litigation's impact on their third-party interests; *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)(corporations engaged in conducting private schools permitted to assert constitutional rights of parents to control their children's educations in challenge to constitutionality of a state statute imposed criminal liability on parents who failed to send their children to public school).

which they could not import wine for personal consumption.

Plaintiffs claim that Guenthner's affidavit is insufficient to prove that the statute advances any permissible state interests. They concede that Texas adopted its three-tier system after the adoption of the twenty-first amendment with its main objectives of protecting consumers from organized crime and "tied house" arrangements.[14] They emphasize, however, that § 107.07(a) was not enacted until sixty years later, in 1995. Moreover, the statute does not address the concerns it claims. A "tied house" arrangement, common during Prohibition, involved manufacturers who controlled the distribution and sale of their products in a vertical monopoly that squelched competition, restrained trade, and subjected retailers to extraordinary pressures from their controlling manufacturers to increase alcoholic beverage consumption regardless of social cost. H. Rep. No. 1542, 74th Cong., 1st Sess. 3, 5–12 (1935). The three-tier system cured the problem by putting an independent wholesaler between the manufacturer and retailer. The statute, on the other hand, does not serve these public policy interests. Plaintiffs seek access to purchase wine not available to them locally because of the statute's prohibitions. Affidavits from Dr. Dodd and Vinters Clark and Ballard demonstrate why small wineries practically cannot comply with the requirements or obtain shelf space to sell a few cases of wine. If successful, Plaintiffs maintain, their suit would enhance competition and increase consumer choice, while the influence of organized crime would be eliminated by giving consumers the unfettered ability to choose the wines they wish to buy.

Plaintiffs further assert that Defendant has not shown how the statute keeps dry counties dry or why the statute is necessary in light of specific criminal penalties in existence against such sales.

Guenthner's claim that the three-tier system serves to combat bootlegging has also not been proven, Plaintiffs maintain.

Plaintiffs also charge that contrary to Defendant's argument, the twenty-first amendment does not repeal the commerce clause. *Brown–Forman,* 476 U.S. at 584, 106 S.Ct. 2080 ("It is well settled that the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of the Commerce Clause."). Federal Courts examining the issue have consistently insisted that the State's exercise of reserved powers be genuinely directed to the goals of temperance and avoidance of the evils of unregulated trafficking in liquor, and not to enact legislation designed to promote a local industry, regulate sales beyond its borders in other states or discriminate against non-residents. *Bacchus Imports,* 468 U.S. at 276, 104 S.Ct. 3049; *Brown–Forman,* 476 U.S. at 585, 106 S.Ct. 2080; and *McBeath,* 11 F.3d at 555. Plaintiffs cite *Loretto Winery, Ltd. v. Gazzara,* 601 F.Supp. 850 (S.D.N.Y.1985), *modified,* 761 F.2d 140 (2d Cir.1985) (refusing to require wine product sold locally to be derived from in-state grown grapes), and *Pete's Brewing Co. v. Whitehead,* 19 F.Supp.2d 1004 (W.D.Mo.1998) (rejecting requirement of labeling on malt liquor showing the drink was brewed at a location not owned by the labeler) to rebut the idea that the mere assertion by the state that a statute serves a core state power insulates review under a commerce clause challenge. *See also McBeath,* 11 F.3d at 555.

Finally, Plaintiffs emphasize that they seek very limited relief that would not impede the state's interests under the twenty-first amendment: they would protect only persons importing wine for personal consumption, not for resale; they seek no other changes in the Alcohol Beverage Code relating to the sale or possession of alcohol nor to anything other than wine.

---

14. Comments following Tex. Alco. Bev.Code    Ann. § 6.03 and § 102.01.

In a supplementary brief, Plaintiffs submit a copy of a Memorandum and Order in a recent case, *Russell Bridenbaugh, et al. v. Frank O'Bannon, et al.*, Civil Action No, 98–0464 AS,[15] from the United States District Court for the Northern District of Indiana, South Bend Division, which Plaintiffs assert "is directly on point with the issues of this case." In *Bridenbaugh*, wine collectors challenged Indiana statutes that prohibited direct shipments to Indiana residents from out-of-state wine sellers and criminalized shipments by out-of-state wine sellers to Indiana residents that did not hold a valid wholesaler permit. The court held that the statutes violated the commerce clause because on their faces they discriminated against out-of-state commerce. Relying on the Fifth Circuit's reasoning in *McBeath*, 11 F.3d 547, the Indiana judge also rejected Indiana's argument that the twenty-first amendment allowed the state's prohibition.

Defendants have also filed a supplemental brief citing additional cases in support of their previous arguments. Because the cases speak for themselves, and because the Court's review leads it to conclude that Defendants are relying largely on older cases that fail to reflect the marked evolution of law in this area, the Court does not summarize them, but indicates its own interpretation and conclusions below after a careful and thorough examination of earlier and current state of the law.

Because there are no genuine issues of fact here, the constitutional issues are properly decided as a matter of law under Federal Rule of Civil Procedure 56.

■ As a threshold matter, the Court agrees with Plaintiffs for the reasons they have asserted that they have standing to challenge § 107.07(a). They have standing to challenge the statutory provisions restricting their constitutional right under the commerce clause to order direct shipments of wine for their personal consumption from out-of-state wine sellers because they have an injury in fact, a limitation on access to wine from interstate commerce,

caused by or fairly traceable to the statute and the practical restrictions imposed by the three-tier distribution system in Texas established by the Code, that is likely to be redressed by the relief they seek. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130.

■ As for Plaintiffs' standing to challenge § 107.07(f) on behalf of third-party, out-of-state wine sellers whose commercial interests are affected by not being able to sell wines directly to consumers in Texas based on the statute and the limitations of Texas's distribution system, but who are not before the Court, the statutory challenge here reflects that there is a special relationship between Plaintiffs and out-of-state sellers in that the latter would be adversely affected if Plaintiffs' claims fail. Furthermore, the interests of Plaintiffs and out-of-state wine sellers are inextricably intertwined and to a large extent, one and the same in terms of effect. Moreover, practical obstacles exist in having every out-of-state wine seller who was willing but is currently unable to make available to and to ship wine to consumers in Texas to come to Texas to litigate. Thus the Court finds that Plaintiffs have standing to challenge the statute on behalf of third party out-of-state wine sellers.

The Court refers the parties to its brief summary of the relationship between and two-tiered approach of the Supreme Court to the commerce clause and the twenty-first amendment in footnote 2 of this memorandum and order as a starting point. It now briefly summarizes the evolution of the law during this century with regard to constitutionality of liquor regulation by the states.

The eighteenth amendment ("After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States ... for beverages purposes is hereby prohibited"), ratified in 1917 and effective a year later, gave the

---

**15.** This opinion is now available at 1999 WL 1243170 (N.D.Ind. Dec.10, 1999).

federal government and the states concurrent power to enforce the national· prohibition on the manufacture, sale and transportation of alcoholic beverages. U.S. Const. amend. XVIII, § 1. Ratified at the end of 1933, the twenty-first amendment repealed Prohibition as well as granted to state legislatures the power to regulate the importation, transportation and distribution of alcoholic beverages for use within their borders. U.S. Const. amend. XXI, §§ 1, 2.

The Supreme Court initially construed the twenty-first amendment very broadly, suggesting that the states had an unfettered right to regulate transportation or importation of intoxicating liquors for delivery or use within their borders that was not limited by the commerce clause. *See, e.g., State Board of Equalization v. Young's Market Co.,* 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936)(twenty-first amendment bars application of commerce clause to discriminatory tax on imported beer); *Joseph S. Finch & Co. v. McKittrick,* 305 U.S. 395, 398, 59 S.Ct. 256, 83 L.Ed. 246 (1939)(commerce clause does not limit state's right to regulate importation of alcoholic beverages); *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 134, 138–39, 60 S.Ct. 163, 84 L.Ed. 128 (1939)(declaring comprehensive Kentucky statute regulating liquor transportation and distribution valid and stating that "[w]ithout doubt a state may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or the use to which they are put").

As the decades passed, however, the Supreme Court increasingly narrowed the states' broad powers to regulate the importation of liquor and recognized that the twenty-first amendment did not repeal the commerce clause,[16] an idea that the Supreme Court has subsequently characterized variously as "an absurd oversimplification," "patently bizarre," and "demonstrably incorrect." *See, e.g., Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 331–32, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964)(federal government retains authority under the commerce clause to regulate even interstate commerce in liquor); *McBeath,* 11 F.3d at 555. *See generally* Susan E. Brownlee, *Economic Protection for Retail Liquor Dealers: Residency Requirements and the Twenty–First Amendment,* 1990 Columbia Business L.Rev. 317 (1990); Sidney J. Spaeth, *The Twenty–First Amendment and State Control Over Intoxicating ·Liquor: Accommodating the Federal Interest,* 79 California L.Rev. 161 (Jan.1991);· Susan M Johnson, *From Bacchus to Our House: Taxation of the Oregon Wine Industry under Current Twenty–First Amendment and Commerce Clause Jurisprudence,* 73 Or. L.Rev. 711 (1994); and Vijay Shanker, Note, *Alcohol Direct Shipment Laws, The Commerce Clause, and the Twenty–First Amendment,* 85 Va. L.Rev. 353 (March 1999). In *Hostetter v. Idlewild,*[17] the Supreme Court observed, "Like other provisions of the Constitution, each must be considered in light of the other and in the context of the

**16.** The Supreme Court has also made clear that the twenty-first amendment does not diminish the power of the supremacy clause and that the states may not ignore their obligations under other Constitutional provisions, including the first and fourteenth amendments. *California v. LaRue,* 409 U.S. .109, 120, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)(Stewart J. concurring)("This is not to say that the Twenty-first Amendment empowers a State to act with total irrationality or invidious discrimination in controlling the distribution and dispensation of liquor within its borders. And it most assuredly is not to say that the Twenty-first Amendment neces-

sarily overrides in its allotted area any other relevant provision of the Constitution."); *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 515, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996)(and cases cited therein).

**17.** In *Hostetter,* the Court held that the commerce clause precluded the New York Liquor Authority from prohibiting sales of wine and liquor to departing travelers for delivery at their foreign destinations because the twenty-first amendment empowered the state to regulate importation of intoxicants only for use, distribution or consumption within its own borders.

interests at stake in any concrete case." 377 U.S. at 332, 84 S.Ct. 1293.

In restricting the scope of power provided to the states by the twenty-first amendment, even under the traditional "core" powers of transporting and importing for use within a state's borders expressly stated in the twenty-first amendment, the Supreme Court increasingly considered the relationship between and effect on each other of federal and state interests. *See, e.g., California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)(California statutory wine-pricing scheme not shielded by the twenty-first amendment from Sherman Act proscriptions against such anticompetitive pricing arrangements); *Department of Revenue v. James B. Distilling Co.*, 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964) (expressly rejecting idea that the twenty-first amendment overrode the import-export clause). "Stress[ing] that important federal interests in liquor matters survived the ratification of the Twenty-first Amendment,"[18] the Supreme Court stated in *Midcal Aluminum,*

> [T]here is no bright line between federal and state powers over liquor. The Twenty-first Amendment grants States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a "concrete case."

*Midcal Aluminum*, 445 U.S. at 108, 110, 100 S.Ct. 937 *citing Hostetter v. Idlewild*, 377 U.S. at 332, 84 S.Ct. 1293. Indeed, the Supreme Court observed, " 'Both the Twenty-first Amendment and the Commerce Clause are parts of the same Con-

stitution. Like other provisions of the Constitution, each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case.' " *Id.* at 109, 100 S.Ct. 937 *citing Hostetter*, 377 U.S. at 332, 84 S.Ct. 1293. Characterizing the new approach as a "pragmatic effort to harmonize state and federal powers," 445 U.S. at 109, 100 S.Ct. 937 the Court observed, "The federal interest in enforcing the national policy in favor of competition is both familiar and substantial." *Id.* at 110, 100 S.Ct. 937.

In *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)(holding that an Oklahoma ban against carrying wine commercials on cable television was preempted by Federal Communications Commission regulations requiring that television signals from out of state be transmitted without alteration; statute is not saved from preemption by twenty-first amendment because Oklahoma's prohibition is in conflict with federal law and the state's power to regulate liquor was not directly implicated), the Supreme Court established a balancing test for cases with conflicts between state and federal law: the court is to determine "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the state regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Id.* at 714, 104 S.Ct. 2694. Where state and federal law conflict and the state's "central power" under the twenty-first amendment to regulate time, place and manner of liquor importation and sale is not involved, the balance tips in favor of federal law and the state law is barred by the Supremacy clause. *Id.* at 716, 104 S.Ct. 2694. The Supreme court struck down the state-law pricing scheme in California because the state's professed interest in promoting temperance was "not substantial." *Id.* at 714, 104 S.Ct. 2694.

---

**18.** As examples, the Supreme Court pointed out that a state cannot tax imported liquor in violation of the export-import clause, insulate

the liquor industry from requirements of equal protection or due process under the fourteenth amendment.

Just as the Supreme Court has altered its original view that the twenty-first amendment in essence repealed the commerce clause where liquor regulation was concerned, it has also modified its concept of the state's core powers under the twenty-first amendment in the face of economic protection statutes and regulations. Initially it showed deference to the amendment's express grant of virtually complete control to the states over importation and sale of liquor and structuring of a liquor distribution system within their own borders. *Midcal Aluminum,* 445 U.S. at 110, 100 S.Ct. 937 *citing Hostetter,* 377 U.S. at 332, 84 S.Ct. 1293. In applying the two-tier balancing test to challenged liquor statutes to determine first whether they discriminate against out-of state interests and, if so, whether they are "saved" by the twenty-first amendment, the courts have increasingly emphasized federal interests and more carefully scrutinized the actual purpose behind the state's law. *Bacchus,* 468 U.S. at 275, 104 S.Ct. 3049

■ In a significant case, *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the Supreme Court dealt with a constitutional challenge to a Hawaiian law exempting some locally produced alcoholic beverages (okolehao and pineapple wine) from a 20% excise tax on wholesale liquor sales in order to encourage development of the Hawaiian liquor industry. Noting that "[a] cardinal rule of Commerce Clause jurisprudence is that '[n]o State, consistent with the Commerce Clause, may impose a tax which discriminates against interstate commerce ... by providing a direct advantage to local business,'" the Supreme Court concluded that the Hawaiian law violated the commerce clause because it constituted economic protectionism of local alcohol industries by discriminating against out-of-state industries, as was apparent in both the legislature's discriminatory purpose and the law's effect. *Id.* at 268, 104 S.Ct. 3049 *quoting Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 329, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977), and 272–73. In accordance with the two-tiered

analysis discussed in footnote 2, the Court then asked whether the twenty-first amendment could save the law. Observing that the legislative history and scope of the twenty-first amendment are obscure, the Supreme Court asserted that

one thing is certain: The central purpose of [the twenty-first amendment] was not to empower States to favor local liquor industries by erecting barriers of competition. It is also beyond doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkanization.... State laws that constitute mere economic protectionism are therefore are not entitled to the same deference as laws enacted to combat the perceived evils of unrestricted traffic in liquor [citations omitted].

468 U.S. at 276, 104 S.Ct. 3049. The Supreme Court concluded that the Hawaiian law was not intended to promote temperance, but only "mere economic protectionism" that does not fall within the ambit of the state's powers under the twenty-first amendment. *Id.* "Consequently, because the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment, we reject the Stat's ... claim based on the Amendment." *Id.*

Several lower court cases, one from the Fifth Circuit, have extended the reasoning of *Bacchus.* The Court discusses them chronologically since they build on each other.

In *Loretto Winery v. Gazzara,* 601 F.Supp. 850, 861 (S.D.N.Y.), *aff'd and modified as to remedy sub nom. Loretto Winery v. Duffy,* 761 F.2d 140 (2d Cir. 1985), Judge Brieant examined the New York Alcoholic Beverage Control Law ("the ABC law") that permitted that the sale of a "wine product," defined as "a beverage containing inter alia, 'wine produced exclusively from grapes grown in New York State and containing not more that six percentum [sic] alcohol by volume,'" in retail grocery stores pursuant to

a license, a practice not previously allowed. 601 F.Supp. at 852. The statute thus left the earlier ban against sale of wine products in retail grocery stores in effect as to products made wholly or in part from grapes grown outside of New York State. Loretto Winery, a California corporation with its principal place of business in that state, made wine and wine products, including its "California Special Wine Cooler" containing six percent alcohol and sold in forty states, from California grapes and challenged the constitutionality of the ABC law. Judge Charles Brieant categorized the case not as one in which the state enacted a law that regulated evenhandedly to promote a legitimate local concern with a merely incidental effect on interstate commerce, but rather as one that discriminates against out-of-state products solely because of their origin, a protectionist measure warranting a per se rule of invalidity under the commerce clause. *Id.* at 857. Observing that the ABC law would be unconstitutional because discriminatory in both its purpose to promote the sale of New York labelled wines and its effect of placing out-of-state grape producers at a significant competitive disadvantage, *id.* at 857–58, Judge Brieant observed the new emphasis on balancing federal and state interests when the power of the state under the twenty-first amendment was implicated as a "pragmatic effort to harmonize state and federal powers,"[19] summarized by this Court *supra*, and determined that the federal interest in free trade across state lines had to be balanced against the state interest in promoting temperance. *Id.* at 860–61. He specifically proclaimed, "Only those state restrictions which directly promote temperance may now be said to be permissible under Section 2 of the Twenty-first Amendment." *Id.* at 861. Relying on *Bacchus'* reasoning in its de-

termination that the Hawaiian tax emption law fostered local industry by encouraging increased consumption of local beverages, Judge Brieant concluded that the ABC law widening the market for wine products beyond package stores to local grocery stores discriminated against interstate commerce in out-of-state grapes. *Id.* at 861–62. Furthermore, regarding the state's claim that the purpose of the ABC law was to conduct a limited experiment by selling a wine product in a different type of retail outlet, a decision within the state's regulatory twenty-first amendment power or that only wine products with alcoholic content not in excess of 6% to promote temperance should be sold in groceries, Judge Brieant observed that the claimed temperance-related goal was insufficient to validate the law and that the experiment bore no logical relationship to the place where the grapes were grown to make the wine product. Instead, the real reason was to aid local industry. *Id.* at 862. He declared the law unconstitutional in light of the overriding federal interest in free trade among the several states. *id.* at 863.

In *Quality Brands v. Barry*, 715 F.Supp. 1138 (D.D.C.1989), *aff'd*, 901 F.2d 1130, 1990 WL 51795 (D.C.Cir.1990), the district court of the District of Columbia found that a law banning the sale of liquor that was stored outside the District of Columbia violated the commerce clause and was not saved by the twenty-first amendment, which "was designed only to allow the States to legislate against the evils of alcohol rather than to reward its purveyors.... [T]he powers reserved to the States by the Amendment must be exercised with temperance as their goal." *Id.* at 1140. Thus restricting the scope of

---

**19.** As expressed by Judge Brieant, 601 F.Supp. at 860,

However, with the flow of history, just as the beer of yesteryear has lost its strength and flavor, the broad language of both *Young's Market* and *Ziffrin, Inc.* has been diluted in subsequent decisions by the Court. More recent cases have demonstrat-

ed an unwillingness on the part of the Supreme Court to allow a state legislature to conduct a trade war against another state, contrary to the principles underlying the commerce clause, simply because the product discriminated against is an alcoholic beverage subject to regulation under the Twenty-first Amendment.

the twenty-first amendment's saving power to statutes promoting temperance, and observing that "residents of the District can drink as much as they want to so long as they drink liquor stored inside the District," the court rejected the statute and the purposes behind it offered by the District of Colombia, including taxation, as not directly related to this goal. *Id.* at 142–43.

In *McBeath*, 11 F.3d 547, 553 (Texas statute requiring at least 51% Texas ownership of corporation to obtain alcoholic beverage permit subjected to strict scrutiny and determined to constitute "impenetrable barrier to entering Texas liquor industry on substantially equal terms as Texans enjoy"), the Fifth Circuit in an opinion authored by Judge Edith Jones,[20] relying on the cases discussed above, concluded that the residency requirements imposed a burden on the state to justify the violation of the commerce clause in discriminating against nonresidents, which the state was unable to satisfy. Judge Jones wrote,

> Defendants' purported justification are unpersuasive and insufficient to defend the State's arbitrary treatment of non-Texans. The State contends first that its distribution system was established "to protect the health, safety, welfare, morals and temperance of its citizens." Tex. Alco. Bev.Code Ann. § 1.03 (West 1978) (articulating these as policy goals underlying the Texas Liquor Control Act). Such boilerplate enabling language hardly explains the State's particular restrictions on out-of-state ownership of various liquor licenses.

*Id.* at 554. The State has offered the same explanation in the instant case.[21] The Fifth Circuit further pointed out that the State must prove that the statute's local benefits must justify the commerce clause

violation and that neutral alternatives are unavailable to protect the state's interests, neither of which it did in *McBeath*. *Id.* Judge Jones remarked, "So long as an applicant meets the necessary qualifications and comports himself according to the governing standards, the State would be hardpressed to offer a justification substantial enough to authorize a wall prohibiting equal competition of non-Texans in the retail liquor business." *Id.* Moreover, relying on *Midcal Aluminum* and *Bacchus*, Judge Jones emphasized that a state's unique power to structure its liquor distribution system is no longer viewed as "absolute and must coexist with Congress' power to regulate commerce." *Id.* at 555. She concluded that the twenty-first amendment did not save laws that constitute "mere economic protectionism," such as the one at issue "shielding the State's operators from the rigors of outside competition" in violation of the "principle of nondiscrimination animating the Commerce Clause." *Id. See also Bridenbaugh v. O'Bannon*, 78 F.Supp.2d 828, 830–31 (N.D.Ind. 1999)(relying on *McBeath, Quality Brands*, and *Loretto* ).

■ In light of the evolution of relevant law discussed above, the Court finds that Texas Alcohol Beverage Code Ann. § 107.07(a) and (f) facially discriminates against out-of-state vintners and wine shippers, especially small ones, prohibiting direct shipments to consumers and in requiring them to attempt to go through Texas retailers to ship wines to in-state consumers, thereby benefiting Texas wholesalers and retailers by means of such economic protectionism, negatively impacting Texas consumers because of more limited wine selection and higher prices, and impeding interstate commerce in violation

---

**20.** Because of the death of Judge Williams, the case was decided by a quorum, pursuant to 28 U.S.C. § 46(d), with the other participant being Judge Reynaldo G. Garza.

**21.** The State in *McBeath* also put forth as practical justifications for its residency requirement that it could not perform the intense screening of a permit applicant's reputation in the community and thorough business and financial investigation on an out-of-state applicant. The Fifth Circuit rejected the argument and suggested numerous neutral alternatives that were less burdensome that a flat residency proscription. *Id.* at 554.

of the commerce clause. Because the Court finds from the statute's effect that Texas' purpose in § 107.07 is protection of in-state liquor wholesalers and retailers at the expense of out-of-state wine sellers, the more flexible *Pike* approach[22] is not applicable and the Court applies the stricter rule of invalidity. *Bacchus*, 468 U.S. at 270, 104 S.Ct. 3049, *citing Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471 & n. 15, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

■ While a statute directly regulating or discriminating against interstate commerce can still survive a commerce clause challenge if the state proves the existence of a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives, the state of Texas has not done so here. The Court agrees with Plaintiffs that for established local interests, traditionally including (1) collection of taxes otherwise avoided by the circumvention of the three-tier distribution system, (2) prohibiting delivery of alcoholic beverages to dry areas, and (3) prohibiting delivery of alcoholic beverages to minors, there are reasonable, nondiscriminatory alternatives, including more narrowly drawn statutes, to the disputed statute's over-inclusive total ban on direct shipping by out-of-state wine sellers to consumers for their personal consumption. Indeed Plaintiffs have specifically pointed to Tex. Alco. Bev.Code Ann. § 106.03 (Class A misdemeanor to sell alcoholic beverages to a minor); § 106.06 (Class B misdemeanor to make alcoholic beverages available to a minor); § 107.03 (prohibits any carrier from transporting and delivering liquor to a person in a dry area); § 101.31 (prohibits alcoholic beverage transportation, delivery or possession with intent to sell within any dry area). Furthermore, because of the availability of neutral, less burdensome alternatives to the proscription challenged by Plaintiffs, the Court agrees with the

Fifth Circuit in *McBeath* that the State's reliance on the boilerplate police power to protect the health, safety, welfare, morals and temperance of its citizens is insufficient to justify the direct shipment ban.

■ Because the Court concludes that there is a unjustified, *per se* commerce clause violation here, the Court examines whether the twenty-first amendment saves the Texas statute.

The Court finds that there is no temperance goal served by the statute since Texas residents can become as drunk on local wines or on wines of large out-of-state suppliers able to pass into the state through its distribution system, and available in unrestricted quantities, as those that, because of their sellers' size or Texas wholesalers or retailers' constraints, are in practical effect kept out of state by the statute.

Accordingly, for reasons explained above, the Court

ORDERS that Plaintiffs' motion for summary judgment is GRANTED and Defendant's cross motion for summary judgment is DENIED. The Court furthermore

ORDERS Plaintiffs to submit to the Court within fourteen days of receipt of this order a proposed final judgment encompassing the declaratory and injunctive relief they seek. Defendant may file any objections within five days of being served with a copy. The Court will then issue a final judgment.

---

**22.** Under that test, in considering the practical effect and relative burden on interstate commerce, the court looks to whether legitimate state objectives are credibly advances, whether there is patent discrimination against interstate trade, and whether the effect on interstate commerce is direct or incidental. *Bacchus*, 468 U.S. at 270, 104 S.Ct. 3049 *citing Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. 2531.