Jessie **PENDLETON**, et al.,
Plaintiffs-Appellants,

v.

Tommy **HEARD**, et al.,
Defendants-Appellees.

No. 86–4747.

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1987.

Opinion on Denial of Rehearing
Sept. 16, 1987.

Carroll Rhodes, Hazelhurst, Miss., for plaintiffs-appellants.

Miriam Eisenstein, Jessica Dunsay Silver, Irving Gornstein, U.S. Dept. of Justice, Washington, D.C., for amicus curiae-U.S.

John H. Henley, W. Brand Henley, Jr., James W. Henley, Henley, Lotterhos & Henley, Jackson, Miss., for defendants-appellees.

Stephen J. Kirchmayr, Jr., Richard G. Jones, Asst. Attys. Gen., for Cupit, State Bond Atty. & Pittman.

Before CLARK, Chief Judge, RANDALL, and DAVIS, Circuit Judges.

CLARK, Chief Judge:

The issue in this case is whether the Tax Injunction Act of 1937 bars the district court's exercise of jurisdiction over a complaint asserting that Section 5 of the Voting Rights Act is violated when a County Board of Supervisors refuses to call elections on proposed county road and bridge bonds. The district court held the Tax Injunction Act did apply to this case and dismissed the complaint for lack of jurisdiction, 642 F.Supp. 940 (S.D.Miss.1986). We reverse and remand for trial of the merits by a three-judge district court as mandated by the Voting Rights Act.

### Background

The plaintiffs in this case, individual black and white residents of Copiah County, Mississippi, the Crystal Springs branch of the National Association for the Advancement of Colored People, and the local Citizens for Better Government, sued the members of the Copiah County Board of

Supervisors, the State Bond Attorney, and the State Attorney General.

The plaintiffs' first assertion was that the defendants had violated Section 5 of the Voting Rights Act by not preclearing the state statute that contains the procedure for issuing county bonds. Miss.Code Ann. § 19–9–11 (1972). The statute was passed in 1971. It provides that the county board of supervisors shall publish notice of its resolution to issue bonds. If twenty percent or 1,500 of the qualified electors, whichever is less, sign a protest petition, an election shall be held on the bond issue.[1]

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (1981), requires that Mississippi and certain other states and local governments obtain preclearance from the United States Attorney General before enacting voting procedures that differ from those in force or effect on November 1, 1964.[2] After this suit was filed, the state submitted Section 19–9–11 for preclearance and it was precleared by the United States Attorney General.

1. § 19–9–11.  Notice of intention to issue bonds; calling of election.

Before issuing any bonds for any of the purposes enumerated in sections 19–9–1, 19–9–3, the board of supervisors shall adopt a resolution declaring its intention so to do, stating the amount of bonds proposed to be issued and the purpose for which the bonds are to be issued, and the date upon which the board proposes to direct the issuance of such bonds. Such resolution shall be published once a week for at least three consecutive weeks in at least one newspaper published in such county. The first publication of such resolution shall be made not less than twenty-one days prior to the date fixed in such resolution for the issuance of the bonds, and the last publication shall be made not more than seven days prior to such date. If no newspaper be published in such county, then such notice shall be given by publishing the resolution for the required time in some newspaper having a general circulation in such county and, in addition, by posting a copy of such resolution for at least twenty-one days next preceding the date fixed therein at three public places in such county. If twenty per cent (20%), or fifteen hundred (1500), whichever is less, of the qualified electors of the county, supervisors district, or road district, as the case may be, shall file a written protest against the issuance of such bonds on or before the date specified in such resolution, then an election on the question of the issuance of such bonds shall be called and held as is provided in sections 19–9–13, 19–9–15. If no such protest be filed, then such bonds may be issued without an election on the question of the issuance thereof, at any time within a period of two years after the date specified in the above mentioned resolution. However, the board of supervisors, in its discretion, may nevertheless call an election on such question, in which event it shall not be necessary to publish the resolution declaring its intention to issue such bonds as herein provided.

Miss.Code Ann. § 19–9–11 (1972).

2.  Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964. November 1, 1972, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made. Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

The remaining contentions in this case arise from the practices actually followed by the Copiah County Board of Supervisors. On seven occasions between March 1984 and May 1986, the Supervisors published notice that they intended to issue bonds in amounts ranging from $500,000 to $800,000. On each occasion the plaintiffs and others submitted protest petitions purportedly signed by more than 1500 of the county's electors. Upon receipt of each petition, rather than calling an election as the state statute required, the Supervisors withdrew notice of the bond issue. After seven repetitions of this scenario, the Supervisors tried a new tactic. Instead of proposing one county-wide bond issue, they published their intent to issue five bond issues, one for each supervisor's district, each in the amount of $150,000. This time, rather than filing protest petitions, the plaintiffs sought and obtained a temporary restraining order in United States District Court, enjoining the Supervisors from taking further action to implement the contested bond issues.

The plaintiffs assert that the practice of noticing then withdrawing bond issues rather than calling an election is a practice different from that in force or effect on November 1, 1964, which has not been precleared, and therefore the practice violates Section 5 of the Voting Rights Act. They make the same assertion regarding the practice of issuing bonds in each district separately instead of county-wide. The county asserts these practices existed before November 1, 1964. The district court never reached the merits of these contentions because it dismissed the case for lack of jurisdiction.

### I. *Applicability of the Tax Injunction Act*

■ The Tax Injunction Act provides:
The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state. 28 U.S.C. § 1341 (1981).
The defendants assert that the Tax Injunction Act applies to this case because the issuance of bonds necessarily results in a "lien, charge and tax" upon all the taxable property of the county. *Love v. Mayor of Yazoo City*, 162 Miss. 65, 138 So. 600, 601 (Miss.1932). Under their analysis, the Tax

Injunction Act applies to every aspect of a state's revenue operations.

The Tax Injunction Act has been applied to suits for tax refunds, *United Gas Pipeline Co.*, 595 F.2d 323, 326 (5th Cir.1979), and to attacks on the removal of tax exemptions, *Daytona Beach Racing and Recreational Facilities District v. County of Volusia*, 579 F.2d 367 (5th Cir.), *cert. denied*, 440 U.S. 947¢G, 99 S.Ct. 1425, 59 L.Ed.2d 635¢G (1979). It has even been applied to a suit to enjoin the construction of sewers that would be subsequently financed by taxing property owners. *Carson v. City of Fort Lauderdale*, 293 F.2d 337 (5th Cir.1961). However, it has never been applied to the issuance of bonds. It has been held inapplicable to suits to require the collection of taxes, *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301 (5th Cir.), *cert. denied*, 449 U.S. 1015¢G, 101 S.Ct. 574, 66 L.Ed.2d 474¢G (1980), or suits challenging the distribution of tax money, *McDonald v. Doe*, 748 F.2d 1055 (5th Cir.1984).

We need not decide whether the Tax Injunction Act applies to an action such as the issuance of bonds, which is preliminary to the assessment, levy or collection of a tax, because there is a fatal flaw in the defendants' argument. The plaintiffs are not challenging the bond issues. They are challenging the obstruction of their right to vote on those bond issues. The issue would be the same if the county supervisors transferred the polling places to new locations for a vote on a bond issue. A suit claiming the transfer made it more difficult for some electors to vote would seek to vindicate voting rights, not to impede the levy, assessment or collection of state taxes. Similarly, the plaintiffs in this case assert that the repeated practice of withdrawing notice of bond issues whenever a protest is filed rather than holding an election, creates a new voting practice or procedure which violates the Voting Rights Act. The same assertion is made regarding the new practice of noticing five separate district bond issues.

In a case challenging the retention of records unlawfully seized by the Internal Revenue Service, we held that a court must look to the "primary purpose" of the lawsuit to decide whether the statute prohibiting courts from restraining the collection of federal taxes would apply. *Linn v. Chi-*

*vatero,* 714 F.2d 1278, 1282 (5th Cir.1983). In *Linn* we held the Anti-Injunction Act did not apply because the purpose of the suit was the recovery of unlawfully seized property, with only an incidental connection to taxation.

Similarly, the purpose of this suit is the vindication of voting rights. Any effect on the issuance of bonds or the subsequent imposition of taxes is incidental. Assuming *arguendo* that the Tax Injunction Act would apply to attacks on bond issues in general, it does not apply to the Voting Rights claims in this case. We therefore remand the case to the district court for a determination of the merits.

## II. *Mootness*

 The defendants assert that this case is now moot because the state statute has been precleared and no bond issues are currently pending. We agree that the preclearance issue is moot, but other critical issues remain viable. The plaintiffs seek a declaratory judgment that the practice of noticing then withdrawing bond issues without calling elections is a violation of the Voting Rights Act. This is not a happenstance in Copiah County. The practice has been employed on seven recent occasions. It is clearly a practice "capable of repetition yet evading review" if review must be had before the bond issue is withdrawn. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The same is true of the asserted change in practice from county-wide to individual district bond issues. The claims on these two issues are not moot.

## III. *Prevailing Party*

The plaintiffs assert they are the prevailing parties in this action because they prompted the state defendants to seek preclearance of the Mississippi statute. As prevailing parties they would be entitled to attorneys fees under 42 U.S.C. § 1973*l*(e) and 1988.

 In this circuit the test for prevailing party status is whether the plaintiff acquired the primary relief that was sought. *Commonwealth Oil Refining Co., Inc. v. E.E.O.C,* 720 F.2d 1383, 1385 (5th Cir.1983). It is sufficient if the lawsuit causes the defendant to take the desired action. *Iranian Students Assoc. v.*

*Sawyer,* 639 F.2d 1160, 1163 (5th Cir.1981). The plaintiffs in this case did acquire the primary relief they sought from the state defendants. They are, therefore, the prevailing party as against the state defendants. The plaintiffs cannot yet be considered the prevailing party against the county defendants because they have not acquired the primary relief they seek, an election on the bond issues or a declaratory judgment that the repeated notice-cancel practice and the change from county-wide to individual district issues violate the Voting Rights Act.

## Conclusion

We reverse the district court's dismissal of this case. The Tax Injunction Act does not bar federal jurisdiction of the claims that are not moot. The case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

## ON PETITION FOR REHEARING

Before CLARK, Chief Judge, RANDALL and DAVIS, Circuit Judges.

PER CURIAM:

Defendants-Appellees petition the court to rehear this case and amend or clarify the opinion entered on August 19, 1987, to make clear that the court did not construe Miss.Code Ann. § 19–9–11 or other state law to mandate the holding of an election nor did the court adjudicate whether any alleged violation of Section 5 of the Voting Rights Act occurred.

The opinion exhibits § 19–9–11 in its entirety as note 1. No part of the opinion undertakes to construe the requirements of the statute or any other Mississippi law. No part of the opinion adjudicates any issue related to the alleged violations of Section 5 of the Voting Rights Act.

The petition for rehearing is

DENIED.