Jerry **BAINBRIDGE**, et al., Plaintiff(s),

v.

John **BUSH, Bob Butterworth and Joseph Martelli,**[1] **Defendant(s).**

No. 8:99–CV–2681–T–27TBM.

United States District Court, M.D. Florida, Tampa Division.

July 17, 2001.

---

1. Governor Bush and Attorney General Butterworth were dismissed as defendants by Court Order dated September 1, 2000 (Dkt.50).

James William Guarnieri, Guarnieri & Martinez, P.A., Brandon, FL, Robert D. Epstein, Epstein & Frisch, Indianapolis, IN, James A. Tanford, Bloomington, IN, John E. Thomas, Gardner, Wilkes, Shaheen & Candelora, Tampa, FL, for Plaintiffs.

Eric Joseph Taylor, Attorney General's Office, Corrections Litigation Branch, Tallahassee, FL, for Defendants.

David H. Lichter, Scott Eliot Perwin, Michael Nachwalter, Kenny Nachwalter, Seymour, Arnold, Critchlow & Spector, P.A., Miami, FL, for Movants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITTEMORE, District Judge.

**THIS CAUSE** came on to be considered on Plaintiffs' Motion for Summary Judg-

ment (Dkt.71) and Defendant's Motion for Summary Judgment (Dkt.73). The Court having reviewed said motions, the parties' memoranda, the brief of amici curiae, having heard oral argument from counsel, and being otherwise fully advised in the premises, finds and concludes as follows:

## I. Introduction

Plaintiffs assert that the Florida direct shipment law, codified at §§ 561.54(1–2), 561.545(1), Florida Statutes, violates the Commerce Clause by discriminating against interstate wine sales and protecting economic interests of in-state business, and by regulating sales transactions that occur in other states. Defendant argues that this Court lacks jurisdiction over the Plaintiffs' claims based on the Tax Injunction Act, 28 U.S.C. § 1341, and that the challenged statutes are precisely the type of laws authorized by section 2 of the 21st Amendment to the United States Constitution and the Webb–Kenyon Act, rendering them immune from attack under the Commerce Clause.

For the reasons discussed below, the Court finds that Florida's direct shipment law, although discriminatory as applied to out-of-state wineries in violation of the dormant commerce clause, represents a constitutional regulatory exercise of Florida's sovereign authority pursuant to the Twenty–First Amendment.

## II. Challenged Statute Scheme [2]

Florida employs a complex regulatory scheme governing the sale and shipment of alcoholic beverages. Florida's Division of Alcoholic Beverages and Tobacco is empowered to:

[S]upervise the conduct, management, and operation of the manufacturing, packaging, distribution, and sale within the state of all alcoholic beverages and shall enforce the provisions of the Beverage Law and the tobacco law and rules and regulations of the division in connection therewith.

FLA. STAT. § 561.02. The Division of Alcoholic Beverages and Tobacco is responsible for enforcing an excise tax which the State imposes on each gallon of beer, wine and liquor sold in the State. See Fla. Stat. §§ 563.05 (beer), 564.06 (wine), and 565.12 (liquor).[3]

Like the majority of states, Florida utilizes a three-tiered system of alcohol distribution, with different classes of licenses for manufacturers, distributers, and retailers. In conjunction with this distribution system, it is unlawful for any person in the business of selling alcoholic beverages *to knowingly ship alcoholic beverages from an out-of-state location directly to any person in this state who does not hold a valid manufacturer's or wholesaler's license.* See FLA. STAT. §§ 561.54, 561.545. In this regard, Section 561.545, Florida Statutes, provides in pertinent part:

The Legislature finds that the direct shipment of alcoholic beverages by persons in the business of selling alcoholic beverages to residents of this state in violation of the Beverage Law poses a serious threat to the public health, safety, and welfare; to state revenue collections; and to the economy of the state. The Legislature further finds that the penalties for illegal direct shipment of

---

2. The parties have filed a Stipulation of Fact and Agreed Statement of the Case for Cross-Motions for Summary Judgment agreeing that there is no genuine issue as to any material fact. In addition, the Joint Stipulation contains the text of applicable Florida statutes. *See* Dkt. 95.

3. The State also imposes a sales tax on the retail sale of alcoholic beverages as well as a tax upon the sale of alcoholic beverages consumed in bars and restaurants. Florida annually collects close to $1,000,000,000.00 in tax dollars from the sale of alcoholic beverages within the state. *See* Joint Stipulation, ¶¶ 27–30.

alcoholic beverages to residents of this state should be made adequate to ensure compliance with the Beverage Law and that the measures provided for in this section are fully consistent with the powers conferred upon the state by the Twenty-first Amendment to the United States Constitution.

A violation of a cease and desist order entered pursuant to the direct shipment law is a felony of the third degree. *Id.*

## III. Standard Applicable to Motions for Summary Judgment

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED. R. CIV. P. 56.

## IV. Discussion

A. *Jurisdiction and the Tax Injunction Act*

Defendant argues that this Court lacks jurisdiction over the present controversy pursuant to the Tax Injunction Act, 28 U.S.C. § 1341. Specifically, Defendant argues that the declaratory and injunctive relief requested by the Plaintiffs in this case "will have the very real effect of restraining the assessment and collection of Florida Taxes" because it would take the shipment of alcoholic beverages outside the State's regulatory and taxation "three-tier" system.

The Tax Injunction Act, 28 U.S.C. § 1341, provides:

The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state.

The Tax Injunction Act was intended to prevent taxpayers from using federal courts to raise questions of state or federal law relating to the validity of particular taxes. *Osceola v. Florida Department of Revenue,* 893 F.2d 1231, 1233 (11th Cir. 1990). Accordingly, the Act prohibits a federal district court, in most instances, from issuing an injunction enjoining the collection of state taxes and from issuing a declaratory judgment holding state tax laws unconstitutional. *California v. Grace Brethren Church,* 457 U.S. 393, 407–08, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).

■ To the extent a challenged statute is regulatory rather than revenue raising in purpose, the measure does not constitute a tax and the Act is inapplicable. *Miami Herald Publishing Co. v. City of Hallandale,* 734 F.2d 666, 670 (11th Cir. 1984). Where a challenged regulatory statute has only a tangential and incidental connection to a tax, the Tax Injunction Act does not deprive the Court of subject matter jurisdiction. *AT&T Communications v. City of Austin,* 42 F.Supp.2d 708, 711 (W.D.Tex.1998) (citing *Pendleton v. Heard,* 824 F.2d 448, 451–52 (5th Cir.1987)). In *Pendleton,* the Fifth Circuit held that courts must look to the primary purpose of the lawsuit when determining whether the case falls within the scope of the Tax Injunction Act. *Pendleton,* 824 F.2d at 451–52.

■ Here, Plaintiffs challenge only Florida's prohibition on the direct shipment of alcohol from out-of-state vendors. They do not challenge the authority of the state to tax direct sales of alcoholic beverages to Florida residents. In fact, it is undisputed that the Plaintiffs are willing to collect and remit excise taxes on direct shipments or otherwise comply with State regulations designed to ensure the collection of applicable taxes. *See* Joint Stipula-

tion, ¶¶ 31–32.[4] While conceivably a decision invalidating Florida's direct shipment could have a tangential effect on the collection of taxes, any such effect would be insufficient to implicate the Tax Injunction Act. *See Pendleton,* 824 F.2d at 451–52.[5] This Court has subject matter jurisdiction.

B. *Constitutionality of Florida's Direct Shipment Law*

A State has "virtually complete control" over the importation and sale of liquor and the structure of its liquor distribution system. *North Dakota v. United States,* 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (plurality opinion).[6] Given the unique protection afforded state liquor control policies by the Twenty–First Amendment, they carry a strong presumption of validity and should not be set aside lightly. *Id.* at 433, 110 S.Ct. 1986 (citing *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)). This is particularly true in the context of the Commerce Clause, given that the Amendment reserves to the States power to impose burdens on interstate commerce in intoxicating liquor that, absent the Amendment, would clearly be invalid. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 712, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). However, the Supreme Court has also made clear that the Twenty-first Amendment does not license the States to ignore their obligations under other provisions of the Constitution and that "[t]o draw a conclusion ... that the Twenty-first Amendment has somehow operated to 'repeal' the Commerce Clause wherever regulation of intoxicating liquors is concerned would ... be an absurd oversimplification." *Id.* at 712–13, 104 S.Ct. 2694.

Accordingly, it must first be determined whether the challenged statutory scheme violates the commerce clause. If the statutory scheme violates the commerce clause, it must then be determined whether it is saved by the Twenty–First Amendment. *See Dickerson v. Bailey,* 87 F.Supp.2d 691, 693 n. 2 (S.D.Tex.2000)

1. Commerce Clause

■■■■ The Commerce Clause provides: "The Congress shall have power .. to regulate commerce ... among the several States[.]" U.S. CONST., Art. I, § 8, cl 3. The clause contains a "dormant" implication that serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins,* 498 U.S. 439, 447, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). In analyzing cases under the dormant commerce clause, the Supreme Court has utilized a two-tiered approach. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the Supreme Court has generally struck down the statute without further inquiry. *See, e.g., Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57

---

**4.** Numerous other alternatives are available to the State to ensure payment and collection of all applicable state taxes. *See* Joint Stipulation, ¶¶ 21–22.

**5.** While one purpose for the challenged statute may be the protection of state revenue, the collection and taxation provisions are codified in statutory provisions separate from the direct shipment statute. The direct shipment statute is a regulatory enactment expressly intended to protect the health, safety and welfare of Florida residents. *See Miami Herald,* 734 F.2d at 671.

**6.** Although *North Dakota* represents a plurality opinion, a review of the Court's decision and the concurring and dissenting opinions reveals that no Justice takes issue with a state's general authority under the Twenty–First Amendment to control and/or limit the sale of alcohol within its borders from sources outside its borders.

L.Ed.2d 475 (1978). In those cases, the Supreme Court employs strict scrutiny and will uphold the statute only where the challenged statute advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, the Supreme Court has examined whether a state's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *See, e.g., Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In either situation the critical issue is the overall effect of the statute on both local and interstate activity. *See Raymond Motor Transportation, Inc. v. Rice,* 434 U.S. 429, 440–41, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978).

The Florida statutory scheme directly discriminates against out-of-state wineries in violation of the first-tier of dormant commerce clause analysis by expressly ˙prohibiting out-of-state wineries from shipping their wine *directly* to nonlicensed Florida residents.[7] As a result of the statutory prohibition, out-of-state wineries must either utilize a Florida wholesaler and retailer to market their product within Florida or forego marketing their wine in Florida. In contrast, in-state wineries have the option of becoming licensed as vendors, thereby avoiding the increased costs of the three-tiered system.[8] *See* Fla. Stat. § 561.221(1)(a); *see also* Joint Stipulation, ¶¶ 24–25.[9] This favoring of in-state interests is the type of discriminatory regulation prohibited by the dormant commerce clause. *See Cooper v. McBeath,* 11 F.3d 547, 555 (5th Cir.1994) (invaliding a Texas statute requiring a sustained period of Texas citizenship and/or residency before a person or entity may receive a mixed beverage permit).

Plaintiffs also argue that, in addition to the discriminatory impact of Florida's statutory scheme as evidenced by the economic advantage granted to in-state wineries, the challenged statutory scheme may also have the indirect effect of regulating sales outside Florida by prohibiting out-of-state wineries from selling and shipping wine to Florida residents even when those residents travel to the out-of-state winery to make their purchase. While a state regulation can violate the commerce clause when it has the "undeniable effect of controlling commercial activity occurring

---

7. Florida's statutory scheme also has the practical effect of preventing many small wineries from selling their wine in Florida. This result occurs because it is not cost-effective for the smaller out-of-state wineries to acquire a Florida wholesaler.

8. At oral argument, the Defendant suggested that, to the extent the Court was convinced that Florida's direct shipment law discriminated against out-of-state wineries in favor of in-state wineries, one available remedy would be to strike down as unconstitutional the statute favoring in-state wineries, presumably section 561.221(1)(a). This remedy is not, however, within the issues framed by the pleadings and section 561.221(1)(a) is not directly challenged by the Plaintiffs, one of whom, incidentally, is an in-state winery. Moreover, because the statutory scheme is within the scope of the Twenty–First Amendment, the appropriate remedy for the alleged constitutional violation need not be addressed.

9. Defendant argues that Plaintiffs have not attempted to become licensed as wholesalers or retailers of alcoholic beverages in Florida and suggest that there is no provision in the Florida Beverage Code that would prohibit such licensing. *See* Dkt. 78, p. 1. However, statutory provisions which generally prohibit manufacturers from holding wholesaler and/or retailer licenses would appear to make it difficult, if not impossible, for the out-of-state wineries to obtain the required permits. *See* Fla. Stat. §§ 561.22(1), 561.24(1).

wholly outside the boundary of the State," *see Healy v. Beer Institute*, 491 U.S. 324, 337, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989), Plaintiffs' argument in this regard lacks significant persuasiveness as Florida law permits individuals to personally bring purchases back to Florida. *See* FLA. STAT. § 562.07(3).

Since the challenged Florida statutory scheme favors in-state interests and may have the effect of impacting conduct occurring outside Florida, the statutory scheme can be upheld under the dormant commerce clause only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. Although the proffered justifications for the statutory scheme are clearly legitimate, these purposes can be adequately served by reasonable nondiscriminatory alternatives. For instance, Florida could license and regulate out-of-state wineries that wish to ship wine directly to Florida consumers through a licensing process similar to that employed with in-state wineries. *See* Joint Stipulation, ¶ 22. Through this licensing process the State could satisfy its revenue concerns by requiring out-of-state wineries to collect and remit all applicable taxes. *Id.* Likewise, the State could address its diversion and "bootlegging" concerns by imposing labeling requirements on wine shipped directly to Florida consumers. Finally, to the extent the State seeks to control the sale of alcohol to minors, there are statutory criminal penalties in place which may be vigorously enforced to ensure compliance. *See* FLA. STAT. §§ 562.11, 562.111.

Accordingly, because the Florida regulatory scheme directly discriminates against out-of-state retailers and nondiscriminatory alternatives are available to serve the legitimate state interests, Florida's regulatory scheme constitutes a per se violation of the commerce clause.

## 2. Twenty–First Amendment

Even if the challenged statutory scheme violates the commerce clause, the Twenty–First Amendment may validate an otherwise discriminatory statute. Section 2 of the Amendment constitutionalized state authority to regulate the transportation or importation of alcohol:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. CONST., amend. XXI, § 2. In the context of the Twenty–First Amendment, the Supreme Court has recognized that the three-tier distribution system employed by Florida and the majority of other states is "unquestionably legitimate." *North Dakota v. United States*, 495 U.S. 423, 432, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990). Accordingly, the only issue is whether the Twenty–First Amendment authorizes the discriminatory impact occasioned by Florida's statutory scheme.

■ Where a statute or policy violates a central tenet of the commerce clause but is not supported by any clear concern of the Twenty-first Amendment (i.e., traditionally temperance), the statute or policy will be found to be unconstitutional. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 276, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). That is, while the Twenty–First Amendment grants states significant power to regulate the sale and distribution of alcohol within their borders, it does not necessarily immunize state liquor laws from invalidation under the commerce clause. *Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994).

■ The primary question in determining the applicability of the Twenty–First Amendment is whether the interests impli-

cated by a state's regulation are so closely related to the core powers reserved by the Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policy. *Id.* at 555 (quoting *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 714, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)).[10] Recent case law has recognized that there are various "core concerns" of the twenty-first amendment, including temperance, raising revenue and "ensuring orderly market conditions." *North Dakota,* 495 U.S. at 432, 110 S.Ct. 1986. This expanded understanding of what constitutes a "core concern" under the Twenty–First Amendment established by the Supreme Court in *North Dakota* must be applied to the constitutional analysis in this case.

Florida enacted its statutory scheme in order to address a perceived "threat to the public health, safety, and welfare; to state revenue collections; and to the economy of the state." These concerns fall well within the "core concerns" of temperance, raising revenue, and ensuring orderly market conditions that were recognized as legitimate by the Supreme Court in *North Dakota.* Additionally, even though the Florida statutory scheme may have protectionist overtones, the State has nonetheless convincingly argued that invalidation of the scheme would hinder its ability to tax alcoholic beverages sold within the state.[11]

In *Milton S. Kronheim & Co., Inc. v. District of Columbia,* 91 F.3d 193 (D.C.Cir.1996), a regulation was upheld under the Twenty–First Amendment even though its enactment was the result of mixed motives. The regulation required that all alcoholic beverages for resale in the District be stored within the District. The court found that although this requirement violated the dormant commerce clause, it was saved by the Twenty–First Amendment because it was enacted to serve the District's "legitimate state interests which would be promoted by requiring geographic proximity of warehouses, e.g., auditing company records, monitoring compliance with the ABC laws, monitoring licenses, checking tax forms for audits, etc." *Id.* at 203.[12] In reaching its conclusion, the court noted that an array of state statutes, including section 561.54, Florida Statutes, would be subject to potential attack based on the Commerce Clause *if administrative and enforcement concerns were not sufficient to justify Twenty–First Amendment protection. Id.* at 204.

In contrast to the "core concerns" analysis traditionally applied in the Twenty–First Amendment context, the Seventh

**10.** In the present case, rather than conflict with express federal policy, Florida's direct shipment law appears to be directly supported by the recent enactment of the Twenty–First Amendment Enforcement Act which amended the Webb–Kenyon Act and created a cause of action in federal court by state Attorneys General to enjoin interstate shipments of alcohol that violate the law of the receiving state. *Compare Florida Department of Business Regulation v. Zachy's Wine and Liquor, Inc.,* 125 F.3d 1399 (11th Cir.1997) (holding Webb–Kenyon Act did not provide federal cause of action for state enforcement of direct shipment laws).

**11.** Florida's temperance and revenue concerns are most certainly genuine given the significant role alcohol tax revenue plays in the State's budget, and the risk, however significant, that allowing the direct shipment of alcohol into the state will increase the availability of alcoholic beverages to minors, *see* Joint Stipulation, ¶ 27–30, 36, 38.

**12.** The court noted that the District of Columbia most likely had mixed motives (including protectionism and enforcement) in adopting the regulation, but found that a legitimate motive, even when mixed with a tainted protectionist motive, was sufficient to invoke the "core concerns" of the Twenty–First Amendment. *Milton S. Kronheim & Co., Inc. v. District of Columbia,* 91 F.3d 193, 204–05 (D.C.Cir.1996).

Circuit in *Bridenbaugh v. Freeman–Wilson*, 227 F.3d 848 (7th Cir.2000), *cert. denied* —— U.S. ——, 121 S.Ct. 1672, 149 L.Ed.2d 652 (2001), held that a similar Indiana statute prohibiting direct shipments from out of state to Indiana consumers by any "person in the business of selling alcoholic beverages in another state or country" was authorized by the Twenty–First Amendment.[13] The Seventh Circuit rejected the "core concerns" inquiry and instead focused on the text and history of the Twenty–First Amendment. *Bridenbaugh*, 227 F.3d at 851. The court held that section two of the Twenty–First Amendment "enables a state to do to importation of liquor—including direct deliveries to consumers in original packages— what it chooses to do to internal sales of liquor, but nothing more." *Bridenbaugh*, 227 F.3d at 853.[14]

The regulation in the present case is virtually identical to the Indiana scheme upheld in *Bridenbaugh* in that nearly every drop of liquor passes through Florida's three-tiered system and is subject to taxation. *See Bridenbaugh*, 227 F.3d at 853.[15] Moreover, as in *Bridenbaugh*, the Florida statutory scheme permits local wineries, but not out-of-state wineries, to ship directly to Florida consumers provided the in-state winery holds the appropriate licenses. *See Id.* at 851. However, the Seventh Circuit in *Bridenbaugh* did not address the impact of this statutory provision on out-of-state retailers since the plaintiffs in that case were Indiana consumers.[16] Thus, unlike the Seventh Circuit in *Bridenbaugh*, this case requires a consideration of the impact of the discriminatory nature of the statutory scheme on out-of-state wineries.

13. The Court in *Bridenbaugh* does not clearly distinguish its commerce clause and Twenty–First Amendment analysis. However, the Court relies primarily on the Twenty–First Amendment in upholding the validity of the regulatory scheme. The Seventh Circuit's decision is consistent with dicta in Justice Scalia's concurring opinion in *North Dakota v. United States*, 495 U.S. 423, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990), stating: "The Twenty-first Amendment ... empowers [a state] to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler." *Id.* at 447, 110 S.Ct. 1986.

14. In contrast to the Seventh Circuit's decision in *Bridenbaugh*, at least two district courts have conducted a different analysis in finding similar statutes invalid or subject to more stringent analysis under the commerce clause. *See Dickerson v. Bailey*, 87 F.Supp.2d 691 (S.D.Tex.2000); *Swedenburg v. Kelly*, Case No. 00–Civ–0778, 2000 WL 1264285 (S.D.N.Y. Sept. 5, 2000) (denying motion to dismiss). First, these courts find the statute violative of the dormant commerce clause as discriminating on their face against interstate commerce. Second, they find the statutes are not saved by the Twenty First Amendment as they did not implicate the core concerns (i.e.,

temperance) of the Twenty First Amendment. These cases are of limited persuasive value as they fail to consider the definition of "core concerns" applied by the Supreme Court in *North Dakota*.

15. Plaintiffs argue that pursuant to sections 561.57 and 562.07(1), Florida Statutes, in-state retailers may deliver directly to consumers. The record is not clear as to how in-state retailers may deliver directly to consumers (i.e. via common carrier or company vehicle). *Compare* FLA. STAT. §§ 561.57, 562.07(1) *with* Plaintiff's Answers to Defendant's Interrogatories (Dkt.92). However, the court in *Bridenbaugh* discounted a similar Indiana statute, at least as applied to consumers, which permitted holders of Indiana wine wholesaler or retailer permits to deliver directly to consumers' homes by noting that "these permit holders may deliver California and Indiana wines alike; firms that do not hold permits may not deliver wine from either (or any) source." *Bridenbaugh*, 227 F.3d at 853.

16. The Court observed: "plaintiffs are consumers [and] do not complain about the statute that apparently limits distribution permits to Indiana's citizens." *Id.* at 854.

As previously discussed, the discriminatory nature of Florida's statutory scheme, when considered from the perspective of out-of-state wineries, violates the dormant commerce clause. However, because the Florida statutory scheme implicates the "core concerns" of the Twenty–First Amendment, it is a valid exercise of Florida's power even as applied to out-of-state wineries. *See Milton,* 91 F.3d at 205. As recently noted by the Southern District of Texas: "In effectuating [their] core power[s], the states are empowered to create a regulatory scheme to monitor the flow and production of liquor and to preclude the diversion of liquor into the state's commerce without first channeling it through the state's regulatory safeguards." *Dickerson v. Bailey,* 87 F.Supp.2d 691, 699 (S.D.Tex.2000) (citing *North Dakota,* 495 U.S. at 431, 110 S.Ct. 1986). In this regard, the numerous interests promoted by the Florida statutory scheme, including temperance, revenue protection, and the reduction of diversion and bootlegging, outweigh the minimal burden placed on interstate commerce.[17]

Florida's statutory scheme is distinguishable from the regulations challenged and stricken as unconstitutional in the cases relied on by Plaintiffs. *See Healy v. The Beer Institute, Inc.,* 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) ("affirmation law" requiring the alcoholic beverage producer to affirm that prices set for local wholesalers are no higher than the lowest prices in other states); *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (same); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (exemption of locally produced alcoholic beverages from wholesale excise tax). In *Bacchus,* the Supreme Court found that the statute was "mere economic protectionism" and not "supported by any clear concern of the Twenty–First Amendment." *Id.* at 276, 104 S.Ct. 3049. Similarly, the affirmation statutes at issue in *Brown–Forman* and *Healy* resulted in the Supreme Court concluding that the statutes "attempt[ ] to regulate sales in other States of liquor that will consumed in other States ..." and "interfere with the ability of other States to exercise their own authority under the Twenty–First Amendment." *Brown–Forman,* 476 U.S. at 585, 106 S.Ct. 2080. In contrast, the Florida statutory scheme is supported by legitimate core concerns of the Twenty–First Amendment, regulates only liquor which is shipped into Florida, and does not interfere with the ability of other states to exercise their powers under the Twenty–First Amendment.[18]

### V. Conclusion

For the foregoing reasons, although Florida's statutory scheme violates the dormant commerce clause, it represents a permissible regulation under the Twenty–First Amendment.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Summary Judgment (Dkt.71) is **DENIED.**

2. Defendant's Motion for Summary Judgment (Dkt.73) is **GRANTED.**

3. The Clerk shall enter judgment in favor of the Defendant on all claims.

**17.** Florida's regulatory scheme applies not only to wine, but to all other alcoholic beverages. Accordingly, absent the direct shipment law it would arguably be possible for manufacturers of any alcoholic beverage, including beer and hard liquor, to ship their product directly to Florida consumers thereby circumventing Florida's Twenty–First Amendment right to regulate the shipment of alcohol into the State.

**18.** In fact, the majority of states have statutes similar to Florida's statutory scheme. *See* Joint Stipulation, ¶ 8.

4. All pending motions are denied as moot and the Clerk is directed to close this case.