REQUESTED BY: Forrest D. Chapman Executive Director
Nebraska Liquor Control Commission
Dear Mr. Chapman:
You requested our opinion regarding the constitutionality of LB 671 enacted during the 2001 Legislative Session.
LB 671 creates a new class of license to be issued by the Nebraska Liquor Control Commission for "any person who sells and ships alcoholic liquor from another state directly to a consumer in this state." Neb. Rev. Stat. § 53-123.15(4) (Session Laws 2001). The cost of such a shipping license is $500.00. Neb. Rev. Stat. § 53-124(12) (Session Laws 2001). Persons holding such a shipping license who ship liquor to consumers in Nebraska are responsible for paying the gallonage tax on the alcohol under Neb. Rev. Stat. § 53-160 (1998) if "required taxes in the state of purchase or this state have not been paid." Neb. Rev. Stat. § 53-162 (Session Laws 2001).
This office rendered an opinion regarding the constitutionality of an earlier draft of LB 671. See Attorney General's Opinion #01009, March 12, 2001. Because there were substantial amendments to the bill before its enactment, we revisit our analysis of the Commerce Clause and theTwenty-first Amendment, as applied to the newly-enacted legislation.
In general, a state cannot impose a tax on persons outside the state who ship goods to persons in the state. Article I of the U.S. Constitution vests in the U.S. Congress the power to regulate commerce among the states and prohibits any state from laying any "imposts or duties" on imports or exports without the consent of Congress. TheTwenty-first Amendment to the U.S. Constitution provides, however, that "the transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby prohibited."
It is a general principle of statutory construction that once a statute is enacted it is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. SeeKalisek v. Abramson, 257 Neb. 517, 520 (1999); Schindler v. NebraskaDept. of Motor Vehicles, 256 Neb. 782, 784 (1999). The U.S. Supreme Court has said that state statutes governing the sale and importation of liquor carry a strong presumption of validity and should not be set aside lightly. North Dakota v. United States, 495 U.S. 423, 433 (1990).
Courts which have considered the constitutionality of state laws prohibiting or regulating the direct shipment of alcohol from outside a state to consumers within the state are not in universal agreement. We find the most persuasive opinion on the subject to be Bridenbaugh v.Freeman-Wilson, 227 F.3d 848 (7th Cir. 2000, cert. denied 2001). InBridenbaugh, the Court of Appeals considered the constitutionality of Indiana statutes which prohibited out-of-state vendors from shipping alcoholic beverages to Indiana residents without going through an Indiana liquor wholesaler. The Indiana statutes were much more restrictive than the Nebraska statutes enacted through LB 671. The court found that Indiana consumers had standing to challenge the constitutionality of the statutes, but found the statutes to be valid. The court examined the history and purpose of the Twenty-first Amendment, and said: "No decision of the Supreme Court holds or implies that laws limited to the importation of liquor are problematic under the dormant commerce clause. What the Court has held, however, is that the greater power to forbid imports does not imply a lesser power to allow imports on discriminatory terms." Bridenbaugh, 227 F.3d at 853, citing Brown-Forman DistillersCorp. v. New York State Liquor Authority, 476 U.S. 573, 579 (1986) andBacchus Imports, Ltd. v. Dias, 468 U.S. 263, 267(1984), for examples of state statutes regulating the sale of alcohol which were held unconstitutional due to "economic protectionism."
The most formidable challenge to the constitutionality of Nebraska's Liquor Control Act, following the enactment of LB 671, could be raised by a plaintiff meeting the definition of a "farm winery" under Neb. Rev. Stat. § 53-103(32) (Cum. Supp. 2000), but operating outside Nebraska and utilizing out-of-state agricultural products. Such a plaintiff could allege that a Nebraska farm winery may enjoy the privilege of direct sales to consumers under Neb. Rev. Stat. § 53-123.11(c) (1998), with a substantial discount on gallonage tax under Neb. Rev. Stat. §53-160(1998). The U.S. District Court for the Middle District of Florida recently addressed a similar issue in Bainbridge v. Bush, ___ F. Supp.2d ___, 2001 WL 826642 (M.D.Fla. July 17, 2001). In Bainbridge, a Florida statute discriminated against out-of-state wineries by prohibiting them from shipping their wine directly to Florida residents who did not hold liquor wholesaler licenses. In-state wineries could be licensed as retailers, avoiding the cost of selling their product through wholesalers and other retailers. The court found that the Florida statute violated the Commerce Clause, but was nonetheless constitutional under the Twenty-first Amendment because the statutory scheme promoted core principles of the Twenty-first Amendment, including temperance and orderly market conditions, while those statutes which had been invalidated by the U.S. Supreme Court in cases such as Brown-Forman
and Bacchus had as their purpose "mere economic protectionism."
The legislative history of LB 671 shows that the bill was designed to promote "core principles" of the Twenty-first Amendment. Witnesses before the General Affairs Committee said that the new shipping license would allow the Liquor Commission to conduct compliance checks to see whether shippers make sales or deliveries to minors. Floor debate referred to an interim study which revealed that Nebraska minors ordered alcohol through the Internet, with deliveries coming by common carrier. Although the only discussion related to temperance in the legislative history was the control of sales to minors, LB 671 would also allow the Liquor Commission to require shippers to comply with all Nebraska statutes and regulations designed to promote temperance, including those regulating labels, advertising, and sales on credit. The legislative history also shows that the bill was designed to promote orderly market conditions. Advocates of the bill noted that when a consumer purchases liquor from a Nebraska retailer, the price paid by the consumer includes a pass-through of the fee for the shipper's license paid by the manufacturer who shipped the alcohol into Nebraska; the fee for the license paid by the wholesaler who received the liquor from the shipper and sold it to the retailer; the gallonage tax paid by the wholesaler to the Liquor Commission; the license fee paid by the retailer; the occupation taxes paid by the retailer which may be as much as twice the cost of the license fee; and applicable city and state sales taxes collected by the retailer. See Neb. Rev. Stat. §§ 53-124, 53-132(4),53-160 and 77-2073. Before the enactment of LB 671, if a consumer purchased liquor directly from an out-of-state vendor, none of the above fees or taxes were paid in Nebraska. Although Neb. Rev. Stat. § 53-162
(Cum. Supp. 2000) required the consumer to pay gallonage tax on alcohol purchased directly from out-of-state vendors, the legislative history of LB 671 reveals that no such taxes were paid. Testimony in the legislative history emphasized that LB 671 will allow the Liquor Commission to inspect records of out-of-state liquor vendors, ensuring that applicable taxes, including consumer use taxes, are paid. LB 671, therefore, was designed to promote orderly market conditions by eliminating an unfair advantage held by out-of-state retailers shipping liquor directly to Nebraska consumers, and to prevent tax evasion.
While an out-of-state "farm winery" wanting to ship its own wine directly to Nebraska consumers might complain of the discount on the gallonage tax made available to in-state farm wineries, we note that the shipper's license created by LB 671 gives the out-of-state vendor many privileges which the Nebraska farm winery license does not include. Neb. Rev. Stat. § 53-124 provides for 45 different classes and subclasses of liquor licenses, each with its own unique rights and restrictions. We find no support for the theory that if the Nebraska Legislature allows the direct shipment of alcohol to consumers in Nebraska it must create new classes of licenses for out-of-state vendors to mirror all the classes of licenses available to in-state vendors. The holder of a shipping license under LB 671 is not similarly situated to the holder of a farm winery license and is not denied equal protection by virtue of LB 671. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432
(1985). Neither is the new shipper's license fee disproportionate to the total fees paid by other classes of liquor licenses, giving rise to a violation of the Privileges and Immunities Clause of the U.S. Constitution. See Toomer v. Witsell, 334 U.S. 385 (1948).
We cannot conclude that LB 671 is unconstitutional. We advise the Nebraska Liquor Control Commission to enforce its provisions.
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General